(61 South. 128.)

No. 19,369.

SIEKMANN v. KERN et al.

(Jan. 20, 1913. Rehearing Denied Feb. 17, 1913.)

*(Syllabus by the Court.)*

APPEAL AND ERROR (§ 1008*)—REVIEW—QUESTIONS OF FACT.

On questions of fraud and simulation and the credibility of witnesses, the opinion of the trial judge who saw the witnesses and heard their testimony is entitled to great weight, and

his judgment, unless clearly wrong, will be affirmed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3955–3969; Dec. Dig. § 1008.*]

Appeal from Civil District Court, Parish of Orleans; E. K. Skinner, Judge.

Action by Mrs. Dr. Ivan F. **Siekmann** against Alonzo D. Kern and others. From a judgment for plaintiff, defendants appeal. Affirmed.

Dart, Kernan & Dart, of New Orleans, for appellants. McCloskey & Benedict and Legier & Gleason, all of New Orleans, for appellee.

LAND, J. This is an action brought by five of the seven forced heirs of Mrs. William Kern, deceased, to set aside as a fraudulent simulation, or donation in disguise, a pretended sale of square No. 495, Seventh district, of the city of New Orleans, made by the said Mrs. William Kern to her youngest son, Alonzo D. Kern, on June 1, 1899, for the purported price of $2,000, represented by $500 paid in cash and a note of the purchaser for $1,500, payable to his own order and by him indorsed in blank. The suit was originally brought against Alonzo D. Kern and Mrs. Gertrude Kern, wife of Samuel Delerno; Mrs. Delerno being also one of the forced heirs of the deceased.

Defendants, after pleading the general issue, averred that the property had been sold and conveyed by the respondent Alonzo D. Kern to the Fidelity Realty Company, a corporation created under the laws of this state, as per notarial act of sale, of date April 27, 1908, and duly recorded on the same day in the conveyance office of the parish of Orleans. For further answer the respondents specially denied that said conveyance of June 1, 1899, was either a simulation or disguised donation, but was a bona fide sale for the consideration therein set forth in cash and $1,500 represented by a note, which was paid by partial payments from time to time, until fully paid and canceled.

Plaintiff filed a supplemental petition making the Fidelity Realty Company a party defendant, and alleging that the so-called corporation was organized for the sole purpose of placing the property in dispute out of the name of Alonzo D. Kern, to whom was issued 45 of the 50 alleged shares of the stock, the remainder being issued to three nominal stockholders, holding for account of the said Kern. Plaintiffs further alleged that the sale to said company was and is a simulation, resorted to for the purpose of defeating the rights of the plaintiffs, co-owners with said Kern, in said property, and should be annulled and its inscription canceled.

The Fidelity Realty Company answered, pleading the general issue, and averring that it was organized in good faith, that its stockholders are actual stockholders for value paid, and that it is the bona fide owner of the property in dispute for a valuable consideration, and without notice or knowledge of the claim of the plaintiffs.

All of the defendants joined in a supplemental answer, averring, in the alternative, that the consideration of the sale from Mrs. William Kern to Alonzo D. Kern was valuable services rendered by the said Kern to his mother, the said Mrs. William Kern, bills paid for her at various periods, and supporting and caring for her during the last years of her life.

After a lengthy trial, judgment was rendered in favor of the plaintiffs, declaring the acts of sale in question to be fraudulent and simulated, and null and void, and ordering the cancellation and erasure of all inscriptions against the property.

Alonzo D. Kern and the Fidelity Realty Company, through Alonzo D. Kern as president, have appealed.

As is usual in cases of this kind, the record presents a mass of conflicting evidence,

which it is impossible to reconcile, and the solution of the question of simulation vel non depends on the credibility of the witnesses. The judge below, who saw and heard the witnesses, has given this court the benefit of his reasons for judgment. The defendant Kern admitted on the stand that the cash payment of $500, as recited in the act of sale, and as specially pleaded in his original answer, was not made, and testified that said sum represented services rendered to his mother. Kern further testified that he paid the note for $1,500 which he produced in open court. The eight credits indorsed on the note are all in the handwriting of Kern. The checks produced are all payable to bearer, and were collected by Kern, with the exception of one for $200, which appears to have been placed to the credit of Mrs. William Kern. That she received that, or any other sum, as a payment on the note, rests on the unsupported testimony of Alonzo D. Kern. The last credit on the note reads as follows:

"Jan. 21/03...................... $1200."

The check produced is dated "1/26/1904," and is stamped paid on January 26, 1904. The discrepancy as to both the year and date of month is significant. As to this item the judge below says:

"He produces no receipt or voucher for this sum, and the notations on the back of the note show no admission of payment except those in the handwriting of the defendant. These are all self-serving, and, unless corroborated, are not entitled to credit."

The mother kept a bank account which shows no corresponding deposits except in the single instance of the item for $200. Alonzo D. Kern lived with his mother, acted as her agent, and drew checks in her name.

It appears from the testimony of three of the plaintiffs, brothers of Alonzo D. Kern, that there was an agreement or understanding between the four to sell the square and divide the proceeds among the heirs, with the exception of Mrs. Siekmann, who was to receive nothing, and that they took steps to prevent an administration of their mother's estate by paying the debts, and by representing that she left no assets of any value. Alonzo D. Kern denied that there was any such agreement or understanding, but admitted that he furnished his brother William with $400, which was returned to him by mail, and was used in payment of the debts of the estate, the receipts reciting payment by William Kern. The motive for this furtive proceeding is not satisfactorily explained by Alonzo D. Kern, and his letters to his brother William indicate some clandestine understanding between them. The judge below was satisfied from the evidence that there was a "conspiracy" between the four brothers to defraud Mrs. Siekmann of her interest in her mother's estate. The three brothers, plaintiffs, and also Mrs. Siekmann, testified to statements by their mother tending to show that her sale to Alonzo was a simulation. The judge a quo was satisfied that the sale was a sham, and after a careful perusal of the evidence we concur in his conclusion.

Simulations were not unusual in the Kern family. In 1892 Dr. Siekmann loaned William Kern $6,000 at 6 per cent. The note was not paid and litigation followed. Wm. Kern, Sr., made a sham sale of the square in question to his son, William, who made a sham sale to Briede, who made a sham sale to Mrs. Wm. Kern. Alonzo D. Kern admits that he once held the title to other real estate which belonged to his mother.

In 1892, as above stated, Dr. Siekmann loaned William Kern, Sr., $6,000, and subsequently sued to collect the debt. William Kern transferred all his real estate holdings, including the square in question, to third persons, but title to all of this property finally vested in his wife. Dr. Siekmann was compelled to compromise and to accept the

principal of the note, without interest. On the death of Wm. Kern, Sr., Mrs. Siekmann resorted to the courts to secure her share of his estate. This litigation was compromised by the payment of $609 and costs. This litigation, and the suit of Dr. Siekmann, caused an alienation between Mrs. Siekmann and the Kern family, and finally led to the combination between her brothers to deprive her of her share of the mother's estate. Alonzo D. Kern subsequently refused to carry out the agreement, and thereupon his brothers disclosed the facts to Mrs. Siekmann.

Mrs. Wm. Kern, Sr., died in January, 1908. On April 24, 1908, Alonzo D. Kern caused to be organized a corporation known as the Fidelity Realty Company; the subscribers being George A. Wadsworth, 40 shares, John J. Weihing, 5 shares, and Wm. Gowland, Jr., 5 shares. George A. Wadsworth was the Widow Wadsworth, and at the time the fiancée of Alonzo D. Kern, and became his wife in January, 1909. Gowland paid nothing to the corporation for his shares. Neither Weihing nor Gowland testified, and Mrs. Alonzo D. Kern could not under the pleadings, but might have intervened and testified in her own interest. Hence there is no testimony in the record to show the bona fide organization of this corporation, except that of Alonzo D. Kern, a discredited witness. On the third day after the execution of the act of incorporation Alonzo D. Kern, an apparent stranger, sold to the company the square in question and a lot of ground fronting on Tonti street. The act recites that the lot was purchased by the vendor from Mrs. A. S. Jordan on March 17, 1906. The purported consideration of the sale was $15,000 paid in cash. The sale from Mrs. Jordan, the mother of Mrs. Wadsworth, was a simulation, according to Kern's testimony. The sale from Kern to the company was not made for cash as recited in the act of sale, but, according to Kern's testimony, for

shares of stock. The verity of these transactions rests on the uncorroborated testimony of Alonzo D. Kern, who admits that he is practically the owner of the whole corporation. The concealment of Kern's connection with the company, his relations with the apparent incorporators, their failure to testify, or intervene in the suit, and other facts and circumstances tend to the conclusion that the pretended company was organized for the purpose of securing the square in dispute from the pursuit of the coheirs of Alonzo D. Kern. In a case of this kind, the opinion of the trial judge is entitled to great weight, and his judgment, unless clearly wrong, should be affirmed. 1 Hennen's Digest, p. 92.

Judgment affirmed at appellants' cost.